Good morning. I am Tom Sessinger for Lorena Fejeran. We are here today asking for a remand for resentencing due to the denial of the safety valve. In that respect, we are also asking that the Court consider that the application of Rule 32 of the Federal Rules of Criminal Procedure apply to the analysis. The fact of the matter is that it was not just a challenge to the facts that were contained in the pre-sentence report, but also the deductions that were drawn from the pre-sentence report. By the way, I asked for two minutes in rebuttal. I would like to reserve that. I would cite the case of United States v. Houston, 276 Fed 30, 1207 for that proposition. You concede that this is a plain error review? Are these objected to? Yes, it is plain error. What was committed here was plain error because we do not have any record at all to allow the Court to make a meaningful review of the record. The Court here said that the objections are overruled. I guess we could infer from that that it was adopting the facts found in the PSR over Ms. Fejeran's account and her objections. Why isn't that enough? I guess it goes back to what one case said where drawing inferences or trying to figure out what the Court meant is more for game shows than it is for courts. What should the Court have done here? What the Court should have done, at the very least, would have been to say, I adopt the facts and the deductions that were drawn in the pre-sentence report in support of my position that you are not eligible for safety bail. That was not stated. As you recall, there was a statement of reasons form that was filed under seal four days later. At that point, the defendant was no longer in court. The defendant did not have the opportunity to be present at the time the Court was making that ruling. What the Court did essentially is just summarily deny the request for safety bail. That would have been okay if the position taken by the defense was completely frivolous and that there was no basis in fact for what they were saying. Do you know the case of United States v. Job? Job? Yeah, Job. It's a 871-Fed-3rd-852-2017 case. Do you know that case? I'm not familiar with that case, Your Honor, no. Well, the reason I ask you about that case, we held a ruling on a dispute under Rule 32 is an explicit factual finding that resolves the dispute. And here's what happened here. They said objections are overruled, so there was a ruling on the dispute. So I guess I'm trying to figure out what type of statement is required to make the explicit factual finding. It seems to me that the Court had to do two things in this instance. The first thing the Court had to do was to find that there was an aggravating role under 3B1.1. Because what was being contested here was the notion that Ms. Fedrin did not have organizational authority to do anything other than to take the directions of this individual named Pari, P-A-R-I, who we don't know anything about other than the fact that she made contact with this person on WhatsApp. He knew everything about her. He had all the leverage in this case. He knew where she was. He knew all the players. He gave her the instructions on who to contact in order to send the MoneyGram shipments back. If you look at the download of the phone that HSI evaluated, you can see chapter and verse in there as to what she was told to do on the part of Pari in terms of how to pick up the controlled delivery. If the district court said, I find that she recruited others, there is some dispute over who recruited who with respect to another party. If the district court just said, I find that she was involved in recruiting others and instructing them how to deliver the money. That particular word is key in terms of the need to resolve facts in this case. That would have been enough, but it didn't happen here. Words matter in this case because in the PSR and the plea agreement that preceded it, this term recruited was used. The fact of the matter is that there were a lot of players in this case that were not recruited by my client. That would include Bellin, this individual Steve, who evidently was part of this conspiracy at least a year prior to her appearance in the conspiracy. According to the indictment, the inception date was the 1st of January, 2021. The suppliers of the methamphetamine obviously had other people in Guam to do their bidding. It wasn't just Ms. Fedrin. To follow up on Judge Johnstone's question, given that the PSR says that she recruited various people, if the judge had just said, I find that the PSR's description of her conduct is correct, would that be enough? If the court had said that, that it adopted the interpretation that recruitment meant that she had a managerial role in this case, then I suppose that would be quite helpful to the government. But that's more than what Judge Miller just proposed. That does involve a statement as to the facts. Yes. It requires for the court to say something other than, in the middle of the argument of government counsel, hold on counsel, you don't even have to worry about safety valve because that is not going to be, she's not eligible for safety valve. That's all that he said. I understand that. The hypothetical is, the court says, I'm making a finding that the facts set out in the PSR are correct. I'm adopting those as my findings. And that's it. I think that it's not just a matter of consideration, but it's more of an analysis on the part of the court, to say that, yes, I adopt the PSR because under the facts of this case, I believe that she did in fact have responsibility for. You keep adding things that he might have said, but is your answer that without saying those other things, just the adoption of the PSR and then saying that he makes the findings of the facts that are in the PSR, that by itself would be inadequate? If you have contested issues that are viable issues on the part of both parties, I think the court should do something beyond just adopting the PSR. That sounds like a no. That that wouldn't be enough. I would say that would probably not be enough under the facts of this case. However, we don't even get to that because the court never made any reference to the consideration of the PSR during the hearing, during the sentence of the open hearing in court, when my client was present. So the fact that the court eventually adopted the PSR is not enough when all the court has got to do is make a ruling on a dispute? Well, yes and no, because in this case, Your Honor, the adoption that you make reference to did not occur in the courtroom. It occurred four days later in a document under seal. But I'm not even aware of whether the parties were aware that it had been filed. So there's no record of anybody coming back and saying, hey, you know, this is not the way you do it. And we want to reopen the sentencing at that point. It was just it was filed under seal. The parties may have moved on to their neck to the next cases that they were that they were dealing with. We don't know. So let's change the safety valve. The court said, I have had to conclude that she's not eligible for the safety valve. What more did the court need to say? The court. This is a safety valve. Everybody knows what it is. Everybody knows what's going to be it. Everybody knows what the situation is. There's no question. It's a ruling. Not eligible for the safety valve. Well, what more does the court need to say? Well, the court needs to say something analogous to what you find in Section 32. I3B, which is, look, I'm going to rule on this dispute because the arguments of the defense I reject. And I reject for the following reasons because of what is found in the PSR or the court. Objective and give reasons. Is that what you're saying? And give reasons. Yes. Every time. Well, the reason might be just that I embrace the PSR. That might be enough. But that did not happen in this case. That's the problem. The problem is it's akin to these other cases that I cited where the court says, based on all the papers in this case, I deny the safety valve. Or based upon what I know about this case, that's enough. I know that she doesn't qualify for the safety valve. And in those cases in this circuit, it's been held that that's insufficient. All right. Thank you. So we've taken you past your time, but we'll give you two minutes for rebuttal. And we will hear from the government now. May it please the Court, Rosetta St. Nicholas on behalf of the United States. Regarding the I3B1.1 issue, Your Honor, the enhancement of a plus two for an organizer leader is supported on the record. The standard is, if this is a clear error, Your Honor, the controlling case, Your Honor, the controlling case is a vinch case. The vinch case defines what is necessary for an organizer. An organizer has to have the influence and ability. I don't take that to be the defendant's argument here. I think the question is whether the district court made a ruling on disputed facts, given the objection for purposes of Rule 32, and then whether that ruling could support the safety valve relief downstream. Where in the record at sentencing did the district court make a ruling on the disputed facts sufficient to meet our standards? Your Honor, so the case that is applicable is a Rangel case. And with regard to the Rule 32, also the Petrie case, the defendant has had three opportunities to present her arguments. Can you, I guess, how much did the district court say, and I guess you remind us of what the district court said in those cases? Did the district court just say, those are overruled, and was that enough? The court did say that, Your Honor, but we have... And that's all they said? No, Your Honor. So we have to consider the context. First, the defendant filed a written objection to the pre-sentence report. That's where she raised the organizer leader issue. She objected to the grouping. She stated that she's eligible for the safety valve. That's in SER 7. The defendant then filed a sentencing memorandum. In that sentencing memorandum, on ER 32, she raised the 3553 factors, again argued that the defendant was not an organizer leader, advocated for application of the safety valve, and then requested for that variance. So that was in the second filing. At the sentencing, the defendant raised the issue again. She again said, I object to the PSR, and she even stated, the court has the briefs. I am not going to belabor this issue. The defendant... Did the district court rely on the defendant's involvement with Lafretta's organization? Not necessarily. So not necessarily. Yes, we have to know that, don't we? Well, not necessarily that organization, Your Honor. Well, not necessarily isn't good enough under these rules, as I understand it, right? We have to know what factors entered into it, and when the district court doesn't, that was disputed. When the district court doesn't say so, how are we supposed to know whether that entered the sentencing? Your Honor, because the record, for example, the amended plea agreement that was on file, provided the court with the information that the defendant had recruited Jessie Boleyn, that she paid Jessie Boleyn with a small amount of methamphetamine, that she wired $45,000 to the supplier back to PARI. Well, so she might have recruited or compensated some people, but, for example, whether she recruited this person, Stephen, or not. Do we know whether the district court included that in its sentencing? Your Honor, we don't know that, but remember— Why isn't that the end of the analysis, then? Because the purpose of Rule 32 and any safety valve relief that follows from it is to allow us to review whether the facts that the district court accepted for purposes of sentencing, those relevant facts, are there. Do you have a case where we've been able to kind of cobble back together the pleadings in the absence of a ruling on the facts? Well, actually, it actually goes back further. The defendant never triggered Rule 32. The defendant never raised any specific factual objections. Well, but just a minute. I don't think that's necessarily true. I think it can come from the questions that my colleague has been at, but it certainly comes from whether Fedrin recruited Stephen. That's a factual dispute, and that was objected to. And I don't know what the district court decided about that. Your Honor, I believe that the defendant objected to the characterization— No, no, just a minute. The objection is, as I read the objection, it was to whether she recruited Stephen or not. She said she didn't. The PSR said she did. And I don't know what the district court thought about that. Your Honor, we have to look at the context of what the ruling— Well, I am looking at the context. I looked all the way through. I don't know what the district court did about Stephen. That's a big deal. Because the defendant is not only supposed to be recruiting others, but when it gets down to Baylin and then it gets down to Stephen, all of these are big deals. And it adds to the sentence. Which were all part of the record, Your Honor. Well, I know, but I'd like to know what the district court felt about that. Tell me. I don't know what they said. Your Honor, I think that the court did state that she understood the objection— he's understood the objections, and he denied it. Well, he understood the objections, but he didn't tell me, did this defendant recruit Stephen? Did this defendant go along with recruiting Baylin? Did this defendant go on with LaFrandez? And that's an Idaho pronunciation, probably way out of it. But nonetheless, every one of these, connection with these, Jesse Baylin, every one of these. I mean, and I said to myself, what did the district court decide? Well, Your Honor, looking at the context and looking at Cardi, Your Honor, the court is not obligated to raise every single issue. The court is not required to tick off each 3553 factors. And an adequate explanation may be inferred— Just a minute. If I see Cardi, I'm looking at Rule 32-I-3-B. Yes, Your Honor. The court must, for any disputed portion of this report, rule on the dispute and determine whether ruling is unnecessary. Now, that was not undone by Cardi. No, Your Honor. That is obvious. And that's why I keep, if you will, continuing to give you the business about this. I want to know what the district court did. And if I can't, then I have to send it back and find out what the district court wants to do. So, Your Honor, our position is that the defendant never raised a specific factual objection. Well, not— I read you the factual objections. Your Honor, they were not raised at the time of sentencing. And that would have triggered the Rule 32 obligation. And Rule 32 does not apply to recommendations, opinions, or conclusions, or arguments directed at persuading a court. It's a narrowing rule. It's a rule that reduces what the judge is required— the district judge is obligated to do. And it's based on— What did the defendant's counsel need to do at sentencing he did not do? I'm sorry, Your Honor. You say he didn't raise it at sentencing. Correct. He made the specific objections to the PSR prior to sentencing. He remade the objections at sentencing. And that put it straightly on the district court to decide what to do. And then the district court didn't do anything. Your Honor, the defendant objected to the characterization. There was no specific factual objection. What about on SCR 8 in the defendant's objections to the PSR? The PSR attempts to claim Ms. Fejeron somehow recruited Stephen, but Stephen is alleged to have been part of the conspiracy already. I mean, isn't the— Granted, it's not totally explicit, but it seems like the pretty clear import of that sentence is I don't think that she actually recruited Stephen. So why isn't that an objection to the factual claim about whether she recruited Stephen? Well, we do know that according to the defendant's amended plea agreement, she recruited Boleyn. She paid people a half gram of methamphetamine. Those are all things that the district court might have said, but didn't. In terms of the question, was there a factual objection to the PSR? It seems like the sentence I just read is objecting to one of the facts, and one of the facts that might well have been relevant to deciding whether she was an organizer. So why isn't it? So, Your Honor, our position is that the contents of the amended plea agreement are sufficient to establish the facts, and that the context, Your Honor, is that the defendant— we believe that the defendant objected to the PSR. We believe that Cardi is the appropriate case, as well as Rita. Because the court need not tick off every single factor. We ask the court to look at the context of the court's ruling. It was a short sentencing. It was brief, but we believe that it was legally sufficient. The court explicitly stated, I understand, and the objections are overruled in ER 15. And then the court stated the total offense level was 33, 135 to 168 months. The court then asked the defendant, is there anything else? And the defendant was silent. And so, Your Honor, we believe that the defendant never raised a specific objection. If the defendant did raise an objection to the Lafratez organization, that wouldn't have an effect on the sentence, because that was more background. As far as the factual statements that occurred, the amended plea agreement, we believe, is what controls. All right, thank you. Thank you, Your Honor. Please submit. With the remaining time I have, I want to very quickly say what was argued, not only in the courtroom, but also in the papers that were submitted to the court. For example, in the sentencing memos, experts of record 36, 38, 39. Sealed experts of record seven through eight. The defense said, the defense did not have the spoils. The defense was not a drug trafficker in a leadership role. Didn't organize Bellin, a seasoned drug trafficker, criminal history number four. He didn't need to be organized. He knew exactly what he had to do. The accomplices. Harry provided the names of these accomplices, opening the AOB opening brief at seven. As the money senders, that was another aspect to this. But the most important part is the fact that Perry said, who to contact, who would receive the money grant payments, who would send them, how the business should be conducted. She was a greenhorn. Time of the day to receive the packages. How to send the money in increments. How to wrap the money. What transmitter to use. Make sure you burn the receipts that you received from the post office and so forth. It's possible that the district court was simply offended by other things that were in the pre-sentence report. If you can remember that rather salacious reference to a prosecution reject of an event that happened involving a number of people, including my client, where there was a sexual assault, which she didn't convict, that might have offended the judge right there where he would have said, you know what, I can't give this person safety belt. If that was the case, he should have said so. If he felt as if certain people were organized in this case, he should have said so. But we don't know who was organized, if anybody, by Ms. Fedrin. Recall she also sent her some of these money grams back herself. It wasn't just these other folks. Instructing somebody, by the way, under the holding decision, 908-Fed-3rd-403, giving somebody instructions on how to send money was found in that case to be facilitation and not organization. And I think that's the most important point here, is that yes, she was a facilitator. But again, words matter. And being a facilitator is not the same as being an organizer or manager or supervisor. Thank you, counsel. Thank you very much. Thank both counsel for their helpful arguments and the cases submitted.
judges: SMITH, MILLER, JOHNSTONE